KATHRYN P. COONEY (SBN# 73322)
Attorney at Law
440 Civic Center Drive
Vista, CA. 92084
Telephone: (760) 941-2738
Facsimile: (760) 941-2703
E-mail: kathryn@cooneylawoffice.com

Michael R. Marrinan (SBN# 90484)
Attorney at Law
LAW OFFICES OF MICHAEL R. MARRINAN
225 Broadway, Suite 1460
San Diego, CA. 92101
Telephone: (619) 238-6900
Facsimile: (619) 238-1097
E-mail: mrmarrinan@aol.com

Attorneys for Plaintiffs

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ESTATE OF JOSEPH A. SCATA, JR., deceased, by his parents and successors in interest, Della and Joseph A. Scata, Sr., Della Scata, individually, and Joseph A. Scata, Sr., individually,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF SAN DIEGO, and DOES 1 - 50,<br><br>Defendants. | Case No. 16cv0008-JM (RBB)<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES AND DEMAND FOR JURY TRIAL**<br><br>1. 42 U.S.C. § 1983 Civil Rights Violations - 8th, 14th Amendment<br>2. 42 U.S.C. § 1983 Civil Rights Violations - 14th Amendment<br>3. 42 U.S.C. § 1983 Civil Rights Violations–Unlawful Policies Customs or Habits<br>4. Medical Negligence<br>5. Gov. Code § 845.6 - Failure to Summon Medical Care |

Plaintiffs allege:

## GENERAL ALLEGATIONS

1. Plaintiffs Della Scata and Joseph A. Scata, Sr. are residents of the City Vista and County of San Diego. Plaintiffs' decedent, Joseph A. Scata, Jr., was a resident of the City Vista and County of San Diego at the time of his death on November 23, 2014.

2. Plaintiffs Della Scata and Joseph A. Scata, Sr. are the parents of Plaintiffs' decedent, Joseph A. Scata, Jr. Plaintiffs bring this action as individuals on their own behalf under both federal and California law as set out below. Plaintiffs also bring this action on behalf of the Estate of Joseph A. Scata, Jr., deceased, in their representative capacity as successors in interest of Joseph A. Scata, Jr., deceased. (Plaintiffs have provided declarations pursuant to California Code of Civil Procedure § 377.32, attached hereto as Exhibits 1 and 2.)

3. Decedent Joseph A.Scata, Jr. died intestate in the City of Vista, County of San Diego, State of California, on November 23, 2014. No special administrator or personal representative of the Estate of Joseph A. Scata, Jr. has been appointed by any Court.

4. The plaintiffs' decedent, Joseph A. Scata, Jr., at the time of his death on November 23, 2014, was a 53 year old resident of the City of Vista, California. At the time of his death, Joseph A. Scata, Jr. was single and had no children.

5. At all times relevant hereto, defendants DOES 1-30 were, and still are, residents of the County of San Diego, State of California, and were employees or agents of the County of San Diego. They are sued individually and in their capacities as employees of the County of San Diego.

6. Defendant County of San Diego is, and at all times mentioned herein was, a municipality within the State of California and is the employer of DOES 1-30 herein. The individual defendants performed all of the herein alleged acts for, and in the name of defendant County of San Diego.

7. The names of the individual sheriff's deputies, corrections officers, and Vista Detention Facility ("VDF") medical staff who were responsible for the care and custody of Joseph A. Scata, Jr., and who were responsible for the implementation of policies and procedures designed to insure that the medical needs of the VDF inmates are adequately met, are currently unknown to plaintiffs. As such, these individuals are sued herein as DOES 1-30.

8. The true names or capacities, whether individual, corporate, associate or otherwise, of defendants named herein as DOES 1 through 50, are unknown to Plaintiffs, who therefore sue said defendants by such fictitious names. Plaintiffs will amend this complaint to show the unknown defendants' true names and capacities when the same have been ascertained. Plaintiffs are informed and believe, and thereon allege, that all defendants sued herein as DOES are in some manner responsible for the acts herein alleged.

9. Each of the acts of defendants DOES I through 30, were done by them by virtue of and under their authority as employees of the County, and under the color and pretense of the statutes, ordinances, regulations, customs and usages of the State of California. Said defendants were the servants, agents and employees of defendant County of San Diego, and in doing the acts hereinafter described, acted within the course and scope of their employment. Their acts herein alleged are, therefore, imputed to defendant County of San Diego.

10. At some or all times relevant to this Complaint, Defendants DOES 1-20 were San Diego County sheriff's deputies, correctional deputies or medical personnel and agents of defendant County of San Diego.

11. Prior to the filing of this complaint, on May 18, 2015, plaintiffs filed timely claims against defendant County of San Diego for the injuries alleged herein. These claims were denied on July 7, 2015.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## FACTUAL ALLEGATIONS

12. On October 31, 2014, Joseph A. Scata, Jr. was an inmate in the Vista Detention Facility in Vista, California. The Vista Detention Facility is owned, staffed, maintained and operated by the County of San Diego and the San Diego County Sheriff's Department.

13. On or about October 31, 2014, Mr. Scata began having chest pains and the flu. He sought medical attention and spoke with jail staff, including deputies and medical personnel (DOES 1-20 herein), concerning his illness numerous times from October 31, 2014 until the date of his death, November 23, 2014. In addition, Mr. Scata's parents (Plaintiffs Della Scata and Joseph A. Scata, Sr.) called the jail numerous times over this time period, notifying jail personnel of Mr. Scata's serious and deteriorating medical condition, repeatedly informing them and pleading with them to provide medical treatment and care for their son.

14. Despite Mr. Scata's deteriorating condition up to and including the time he was gravely ill and dying, Mr. Scata and his parents' repeated notification of jail personnel (DOES 1-20 herein) of Mr. Scata's condition, and their repeated requests for medical care for him, at no time was Mr. Scata properly seen or treated for his obvious serious illness, despite the fact that jail personnel (deputies and medical personnel, DOES 1-20 herein), knew he was seriously ill and in need of medical care and treatment. Plaintiffs are informed and believe that, despite knowing that Mr. Scata was seriously ill, defendants DOES 1-20 ignored him, ignored his pleas for help (and those of his family), ignored his pleas for medical care, and were deliberately indifferent to Mr. Scata's serious medical needs.

15. On November 23, 2014, after suffering with empyema and acute bronchopneumonia for weeks without proper medical care or treatment, Joseph A. Scata, Jr. was found unresponsive in his cell. Minutes later, he was pronounced dead. The cause of death, as found by the medical examiner after an autopsy, was right empyema and left acute bronchopneumonia that had existed for several days.

Plaintiffs are informed and believe that several jail employees, both deputies and medical professionals (DOES 1-20), were specifically told of, observed, and were aware that Mr. Scata was seriously ill and needed prompt medical care and attention. Yet they ignored Mr. Scata and failed to summon or provide medical care for him, causing him to suffer needlessly for days, and die.

16. Mr. Scata's illness was fully treatable. Even minimal medical care and treatment would have resolved his illness and prevented his needless suffering and death. Mr. Scata suffered needlessly for weeks, got progressively worse and suffered an agonizing death. Had jail staff (DOES 1-20 herein) provided proper, timely medical care, Mr. Scata's illness would have been successfully treated and he would be alive and well today.

17. The policies and procedures of the San Diego sheriff's department provide protocols and required procedures with respect to inmate welfare, safety, and medical care, as well as investigations of complaints of abuse, failure to provide medical care, and investigations of inmate deaths. Plaintiffs are informed and believe that there has long been a failure by sheriff's deputies and jail personnel to adhere to these policies and procedures, thus leading to and proximately causing the death of Mr. Scata.

18. According to sheriff's deputies and others, it was common practice to fail to properly conduct "hard counts" of inmates in San Diego County jail facilities as required by jail policies, which requires that each inmate's well being be verified.

19. Deputies systematically failed to follow the written policies, because there "isn't enough time to get the job done."

20. It was "common practice" for deputies to look into cells and continue on if an inmate appeared to be sleeping.

21. There had been a systemic failure to investigate incidents of misconduct and deaths in San Diego County jail facilities.

22. Deaths of 60 inmates in the San Diego County jails in a span of five years prompted a series of articles by Citybeat, a local newspaper. Citybeat reported that San Diego County had the highest mortality rate among California's largest jail systems based on data from 2007 to 2012.

23. San Diego County officials, including sheriff's officials, were aware of the systemic problems with preventable deaths in the jails, but took no action to prevent further Constitutional violations, including denial of medical care to inmates.

24. Plaintiffs are informed and believe that in a previous wrongful death incident which occurred in 2009, an inmate witness, Mr. Lim, mailed a letter to a reporter, indicating that the use of force by the deputies on a decedent was excessive and unnecessary.

25. The letter was addressed to Lorie Hearn, the then senior editor at the San Diego Union-Tribune.

26. The jail staff confiscated the letter, opened it, read it, and kept it without advising either Mr. Lim or Ms. Hearn that the letter was being withheld.

27. The investigators then confronted Mr. Lim and interrogated him regarding the substance of his letter.

28. Mr. Lim, after being intimidated, did not pursue the matter any further.

29. At the time of Joseph Scata's death, there had been a long-standing custom and practice of improper and inadequate investigations; cover-ups of misconduct; and failure to discipline and train deputies, including discipline and training relating to their obligation to insure that sick and injured inmates be provided prompt medical treatment.

30. After Joseph Scata died in their custody, Defendants withheld critical information regarding the circumstances of his death from his family, which is consistent with a longstanding custom, policy and practice of the sheriff's department, which makes it difficult for family members and others to learn the

true facts and circumstances of their loved one's death.

31. Plaintiffs are informed that in 2011, another such preventable death occurred to Daniel Sisson in the Vista Detention Facility, the same facility in which Mr. Scata died. Plaintiffs are informed and believe that Mr. Sisson was going through withdrawals, was suffering from asthma, and needed basic medication and medical care. However, jail personnel deliberately failed to provide Mr. Sisson with adequate medical care and, as a result, he suffered a slow agonizing death simply because of the policies and practices existing in San Diego County Detention facilities and the deliberate failure of Vista Detention Facility personnel to provide him with basic medical care that would have treated his illness and prevented his suffering and death. Mr. Sisson's family filed a civil rights lawsuit in this court against the County of San Diego and others, which resulted in a plaintiff's verdict of $3,000,000.00. The County was specifically held liable for deliberate indifference, and for customs, policies and practices within the jail that caused Mr. Sisson's death. (See *Brummett v. County of San Diego,* 12cv1428-BAS (BGS).

32. Plaintiffs are informed and believe that another similar death occurred in September, 2012, in San Diego County's Central Jail. Plaintiffs are informed and believe that jail inmate Bernard Victorianne died in that jail from medical neglect. Much like Mr. Scata, Mr. Victorianne had a medical condition that was fully treatable. However, through neglect and deliberate indifference to his serious medical needs, Mr. Victorianne was allowed to suffer for several days without proper medical care. Eventually, he died. Like Mr. Scata's death, Mr. Victorianne's death was unnecessary and needless. Like Mr. Scata's family, Mr. Victorianne's family was not informed of the true facts and circumstances surrounding his lack of medical care and eventual death.

33. Plaintiffs are informed and believe that, approximately two years later and approximately one month before the death of Mr. Scata herein, the County's

Civilian Law Enforcement Review Board ("CLERB") completed an investigation into the death of Bernard Victorianne, which found numerous instances of misconduct by deputies and medical personnel surrounding the death of Mr. Victorianne. According to CLERB, deputies lied about their actions to the investigators and sheriff's supervisors failed to properly investigate Mr. Victorianne's.

34. Plaintiffs are further informed and believe that, in September, 2014, (one month before Mr. Scata's death), the entire CLERB Board affirmed seven separate counts of misconduct by jail personnel related to the death of Bernard Victorianne. They found that two deputies failed to properly conduct a "Soft Count" in violation of policy; that two deputies failed to take appropriate action in recognizing, reporting or responding to an inmate's emergency medical needs; that a deputy failed to answer truthfully to a question on a Sheriffs Employee Response Form; that a deputy failed to conduct a thorough in-custody death investigation; and that a supervisor failed to supervise an in-custody death investigation according to policy. CLERB found that the medical staff failed to monitor the medical status and well-being of an inmate who had ingested a baggie of unknown illicit drug and that "the symptoms and effects of the decedent's drug overdose or toxicity were clearly evident, but went largely untreated by medical staff; particularly given that it was known and documented in medical records that the decedent had ingested drugs prior to his arrival at SDCJ." Plaintiffs are informed and believe that this type of neglect and deliberate indifference is consistent with a longstanding custom, policy or practice of San Diego County jail personnel, and that nothing changed after these (and other similar findings), and thus Mr. Scata died in October, 2014 from neglect and deliberate indifference to his serious medical needs.

/ / /

/ / /

## **FIRST CAUSE OF ACTION**

[42 U.S.C. § 1983 Constitutional Violations on behalf
of Plaintiff Estate of Joseph A. Scata, Jr. Against DOES 1-20;
8th and/or 14th Amendment Cruel and Unusual Punishment]

35. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 34 above as though fully set forth herein.

36. Jail officials are personally liable for a plaintiff's constitutional deprivation if they acted with "deliberate indifference to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). To allege deliberate indifference, the deprivation must objectively be "sufficiently serious . . . ." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (citing *Wilson v Seiter*, 501 U.S. 294, 298 (1991)). Additionally, the prison or jail official must "know[] of and disregard[] an excessive risk to inmate health or safety. . . ." *Farmer*, 511 U.S. at 837. A prisoner's right to receive adequate medical treatment is clearly established, and it is also clearly established that prison or jail staff cannot "intentionally deny or delay access to medical care." *Clement v. Gomez*, 298 F.3d 898, 906 (9th Cir. 2002).

37. Receiving some form of medical treatment does not prevent a showing of deliberate indifference to a serious medical need. See *Lopez v Smith*, 203 F.3d 1122, 1132 (9th Cir. 2000) ("A prisoner need not prove that he was completely denied medical care.") The Ninth Circuit recognizes that "access to medical staff is meaningless unless that staff is competent and can render competent care" *Ortiz v City of Imperial*, 884 F 2d 1312, 1314 (9th Cir. 1989) (quoting *Cabrales v. County of Los Angeles*, 864 F.2d 1454 (9th Cir. 1988)).

38. In doing the acts and/or omissions herein alleged, defendants DOES 1-20 were deliberately indifferent to the serious medical needs of Joseph A. Scata, Jr., which caused the unnecessary infliction of pain and physical injury to Joseph,

resulting in his untimely death. Plaintiffs are informed and believe that DOES 1-20 were specifically told of Mr. Scata's serious medical condition and/or could see for themselves that he was seriously ill and in severe pain and medical distress. Yet they failed to provide or summon medical care for him, and he suffered needlessly for several days and eventually died. The actions and inactions of the Vista Detention Facility ("VDF") staff (deputies and medical personnel, DOES 1-20 herein), resulted in the violation of Mr. Scata's rights under the Eighth and/or Fourteenth Amendments of the United States Constitution.

39. As a result of the VDF staff's (DOES 1-20) deliberate indifference to Joseph A. Scata Jr.'s serious medical needs, Mr. Scata was subjected to cruel and unusual punishment prohibited by the Eighth and/or Fourteenth Amendment of the United States Constitution. As a result thereof, plaintiff Estate of Joseph A. Scata, Jr. is entitled to damages pursuant to 42 U.S.C. § 1983 in an amount to be proven at trial.

40. The aforementioned acts and/or omissions of the defendants DOES 1-20 were reckless and/or accomplished with a conscious disregard of Joseph A. Scata, Jr.'s rights thereby entitling plaintiffs to an award of exemplary and punitive damages according to proof.

41. As a direct and proximate result of the unlawful acts described above, plaintiffs' decedent Joseph A. Scata, Jr. suffered severe pain, illness and loss of his life. By reason of these acts, plaintiffs' decedent was, and his estate now is, entitled by virtue of 42 U.S.C. Section 1983 et seq., to general and compensatory damages in an amount to be proven at trial.

42. As a further result of the actions of said defendants alleged above, decedent Joseph A. Scata's estate incurred reasonable funeral expenses and loss of such income as Joseph A. Scata, Jr. would have earned in his lifetime. The Estate of Joseph A. Scata and his successors in interest have lost such estate as decedent might reasonably have accumulated in his natural life expectancy. Thus, plaintiffs

are entitled to damages in an amount to be proven at trial.

43. The aforesaid acts of defendants DOES 1-20 were done willfully, maliciously and/or with callous and reckless indifference to and disregard for decedent's safety and continued life, therefore entitling Plaintiffs' to punitive damages in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**

[42 U.S.C. § 1983 Constitutional Violations, Brought By Plaintiffs Della Scata and Joseph A. Scata, Sr., Individually, Against DOES 1-20]

44. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 43 above as though fully set forth herein.

45. As a result of the acts alleged above, particularly the deliberate indifference exhibited by DOES 1-20 to Joseph A. Scata's medical needs resulting in Mr. Scata's needless death, Plaintiffs Della Scata and Joseph A. Scata, Sr. suffered the loss of their son. Thus, the acts of defendants deprived said Plaintiffs of their constitutionally protected due process right to the love, support, affection and companionship of their son, in violation of Plaintiffs' rights as guaranteed by the Fourteenth Amendment to the U.S. Constitution, particularly the due process clause of the Fourteenth Amendment.

46. The acts of defendants and each of them as described above also amounted to recklessness which caused injury and ultimately death to Joseph A. Scata, Jr., thus causing a further violation of the Fourteenth Amendment rights of Plaintiffs Della Scata and Joseph A. Scata, Sr. Said acts proximately caused the death of plaintiffs' decedent, entitling Plaintiffs Della Scata and Joseph A. Scata, Sr. to general and compensatory damages pursuant to 42 U.S.C. section 1983 et seq. in an amount to be proven at trial.

47. The aforesaid acts of defendants DOES 1-20 were done wilfully, maliciously and/or with callous and reckless indifference to and disregard for

decedent's safety and continued life, therefore entitling Plaintiffs' to punitive damages in an amount to be proven at trial.

**THIRD CAUSE OF ACTION**

[42 U.S.C. § 1983 Constitutional Violations -- Unlawful Policies, Customs or Habits, Against Defendant County of San Diego]

48. Plaintiffs reallege and incorporate by reference each and every allegation contained in Paragraphs 1 through 47 above as though fully set forth herein.

49. On information and belief Plaintiffs allege that defendant County of San Diego, through its sheriff's department, and its jail personnel, including deputies and jail medical personnel, has unlawful policies, customs and habits of improper and inadequate hiring, training, retention, discipline and supervision of its sheriff's deputies, jail medical staff and other jail personnel, including DOES 1-20, proximately causing the constitutional deprivations, injuries and damages alleged in the First and Second Causes of Action. As a result, Plaintiffs are entitled to damages pursuant to Title 42 U.S.C. § 1983 and *Monell v. Department of Social Services*, 436 U.S. 658 (1978), in an amount to be proven at trial.

50. Further, on information and belief Plaintiffs allege that defendant County of San Diego, through its sheriff's department, has an unlawful policy, custom or habit of permitting, condoning, ratifying, failing to investigate and failing to take corrective action regarding inmate deaths in their jail facilities, and the deliberate indifference of its employees (deputies and medical personnel) to the serious medical needs of inmates in its correctional facilities.

51. Defendant County of San Diego, through its sheriff's department, maintained an unconstitutional policy, regulation, custom or habit which allowed their deputies and medical staff to deny medical care to inmates.

52. There were longstanding and systemic deficiencies in San Diego jails' treatment to inmates. Deficiencies included improper cell checks, inadequate

medical staffing, lack of required training on screening, diagnosis and treatment of medical and psychiatric conditions, and non-compliant medical policies and procedures.

53. Defendant County's failure to train its deputies on treatment of inmates in medical distress gives inference of a municipal custom that authorized or condoned deputy misconduct.

54. On information and belief, the permanent, widespread, well-settled practice or custom of Defendant County, through its sheriff’s department and jail personnel, was to deny treatment to inmates in serious medical distress and to place inmates in administrative segregation or lock-down instead of the medical ward when inmates complained too much.

55. There was a custom and practice of disbelieving or ignoring complaints of inmates when they request medical attention and denying them access to medical care.

56. There was a custom and practice of not properly screening inmates for medical care or treatment.

57. There was a custom and practice of failing to communicate the medical needs of inmates between the medical staff and deputies.

58. There was a custom and practice of not properly checking on the welfare of inmates, even those inmates known to have serious physical or psychiatric needs.

59. There was a custom and practice of failing to conduct proper cell checks as required by County's own written policies.

60. There was a custom and practice of not properly investigating misconduct of deputies and medical staff.

61. There was a custom and practice of falsifying information during investigations of misconduct and misleading the investigations by the independent citizens' review board.

62. Defendant County of San Diego was deliberately indifferent to the widespread unconstitutional acts by its deputies and failed to set forth appropriate policies and practices regarding the treatment of inmates.

63. During the relevant period, all Defendant deputies, medical staff, and Does 1 through 20, were acting pursuant to the policies, customs, habits and practices of Defendant County of San Diego and its sheriff's department.

History and Pattern of Inmate Deaths

64. Plaintiffs are informed and believe that 60 inmates died in the San Diego County jails in a span of five years. 2007 - 2012, many of whom died as a result of the failure to provide adequate medical care or treatment. This prompted a series of articles by a local newspaper (Citybeat) which reported that San Diego County had the highest mortality rate among California's largest jail systems based on data from 2007 to 2012.

65. This pattern of tragic and needless deaths supports an inference that Defendants are promoted and maintained a culture of deliberate indifference to human life at San Diego County jail facilities, including the Vista Detention Facility where Mr. Scata needlessly died.

66. One such needless death was that of Bernard Victorianne, who died in the San Diego Central Jail in September, 2012. Plaintiffs are informed and believe that Mr. Victorianne died as a result of the failure of jail officials to summon and provide proper medical care. Much like Mr. Scata, Mr. Victorianne had an illness that was fully treatable. However, through neglect and deliberate indifference to his obvious serious medical needs, Mr. Victorianne was allowed to suffer for several days without proper medical care. Eventually, he died. Like Mr. Scata's death, Mr. Victorianne's death was unnecessary and needless. Like Mr. Scata's family, Mr. Victorianne's family was not informed of the true facts and circumstances surrounding his lack of medical care and eventual death. This family's civil rights case is currently pending in this Court. *Estate of Bernard*

*Victorianne, et al., v. County of San Diego, et al.*, 14CV2170-WQH (BLM).

67. Another such preventable death occurred to Daniel Sisson in the Vista Detention Facility in 2011. Plaintiffs are informed and believe that Mr. Sisson was going through withdrawals, suffered from asthma, and needed basic medication and medical care. However, jail personnel deliberately failed to provide Mr. Sisson with adequate medical care and he suffered a slow agonizing death simply because of the policies and practices existing in San Diego County Detention facilities, and the deliberate failure of Vista Detention Facility personnel to provide Mr. Sisson the basic medical care that would have treated his illness and prevented his suffering and death. Mr. Sisson's family filed a civil rights lawsuit in this Court against the County of San Diego and others, which resulted in a plaintiff's verdict of $3,000,000.00. The County was specifically held liable for deliberate indifference, and for customs, policies and practices within the jail that caused Mr. Sisson's death. (See *Brummett v. County of San Diego,* 12cv1428-BAS (BGS).

68. Defendant County of San Diego was similarly deliberately indifferent to the right of plaintiff Joseph Scata, Jr. to be free from, and protected from, harm by the misconduct of it employees, including denial of medical care.

69. The Sheriff Department's longstanding practice or custom was unconstitutional in that it was deliberately indifferent to a substantial risk of serious harm to inmates like Mr. Victorianne, Mr. Sisson and Mr. Scata.

70. As a direct result of the practice or custom of the County of San Diego to deny inmates proper medical care, Defendants, including DOES 1-20, denied medical care to Joseph A. Scata, Jr., allowed him to suffer needlessly for days and weeks, and left him untreated, eventually causing his death.

71. The unlawful and illegal conduct of Defendant County of San Diego, through its sheriff's department, deprived Joseph A. Scata, Jr. of the rights, privileges and immunities secured to him by the Constitution of the United

States.

72. Defendant County maintained a de facto policy of permitting unconstitutional and lawless conduct by its' employees.

73. Defendant County of San Diego, through its sheriff's department, had a special relationship with Joseph A. Scata, Jr., by virtue of the fact that Defendant County had custody and control over Joseph A. Scata, Jr. Due to his arrest, incarceration and severe illness, Mr. Scata could not care for his own medical needs while under arrest and while thereafter incarcerated. Defendant County and its sheriff's department knew this, and further knew that each had a duty to exercise reasonable care in the selection, training, assignment, supervision and retention of its professional staff, including DOES 1-20.

74. By the failures set forth above, Defendant County acted with deliberate indifference to a known risk of constitutional deprivation to Joseph A. Scata, Jr.

75. As a result of Defendant County's deliberate indifference to the risk of deprivation of Joseph A. Scata's constitutional rights, plaintiffs Estate of Joseph A. Scata, Jr., Della Scata and Joseph A. Scata, Sr. incurred damages as set forth herein, including the death of Joseph A. Scata, Jr.

<u>Failure to Train</u>

76. At all times relevant to this Complaint, Defendant County of San Diego, through its sheriff's department, had a custom, policy or practice of failing to train its employees to be observant of and act upon signs and indications of medical conditions and illnesses in detainees. Defendant County failed to implement training materials and programs related to recognizing and understanding medical conditions and illnesses, and ensuring that sick inmates be provided with prompt, adequate medical care, so that sick inmates would not needlessly die.

77. Defendant County, through its detention facility supervisors and directors, has failed to maintain adequate and proper training necessary to

educate deputies and medical staff as to the Constitutional rights of inmates; to prevent the consistent and systematic failure to provide medical care; and to train their deputies properly on inmate's medical needs, safety and welfare.

78. There has been an official policy of acquiescence in, and ratification of, this wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

79. Said Defendants failed to train medical employees and personnel on the necessary care of inmates suffering from serious medical conditions, including conditions that are imminently treatable, and they failed to implement policies and procedures to insure that proper training was provided and that their employees acted consistent with their training, proper medical protocols, and the policies and procedures of the sheriff's department.

80. Said Defendants, with deliberate indifference, disregarded a duty to protect the public from official misconduct related to providing proper medical care to inmates in the county jails.

81. The failure to promulgate or maintain constitutionally adequate training and enforcement of the training was done with deliberate indifference to the rights of Joseph A. Scata, Jr., and others in his position.

82. Despite their knowledge of previous instances of wrongful deaths in the jails due to medical neglect, Defendants failed to properly train or retrain their deputies and medical staff to prevent deaths of inmates.

83. The constitutionally infirm lack of adequate training and supervision of the jail personnel in this case caused Joseph A. Scata, Jr. harm and, ultimately, his death.

84. As a direct consequence of the failure of County of San Diego and its jail supervisory personnel to properly train their deputies and medical staff, Joseph A. Scata, Jr. suffered unconstitutional treatment and inhumane conditions during his detention, ultimately leading to, and causing, his death.

85. As a result of the Defendants' historical failure to properly train its jail personnel, Defendants were deliberately indifferent to the needs of Plaintiff.

86. In addition, Defendant County of San Diego and its jail supervisory personnel failed to provide adequate supervision and discipline to deputies and the medical staff who are required to render medical care that meet the standards of the Constitution.

87. Defendant County of San Diego, through its sheriff's department and jail supervisory personnel, failed to promulgate and enforce adequate policies and procedures related to misconduct and the violation of citizens' civil rights by deputies and medical staff.

88. Defendant County of San Diego, through its sheriff's department and jail personnel, have a widespread history of ratifying deputy and medical staff misconduct by failing to conduct appropriate investigations and take proper remedial action.

89. Defendants were aware of previous instances of untimely and wrongful deaths in the San Diego County Jails and failed to properly supervise and discipline their employees or agents, and failed to take corrective action to prevent needless deaths in their jails.

<u>Refusal to Investigate Complaints of Misconduct</u>

90. Defendant County of San Diego, through its sheriff's department and jail supervisory personnel, often refused to investigate misconduct and/or took no remedial steps or action against deputies and other employees who engaged in misconduct. Beginning at least in 2005, if not before, Defendant County, through it's sheriff's department, has had an unlawful policy, custom or habit of refusing to investigate many citizen complaints against sheriff's deputies, including complaints of excessive force, false arrest, denial of medical care and other misconduct.

91. Law enforcement agencies are required by Penal Code § 832.5 to

investigate all complaints against peace officers. (See, e.g., *Rezek v. Superior Court,* 206 Cal.App.4th 633, 639 (2012) ["Penal Code section 832.5 requires law enforcement departments to investigate complaints against their personnel."]; *Haggerty v. Superior Court*, 117 Cal.App.4th 1079, 1085 [same].)

92. For years the San Diego County Sheriff's Department has been violating this law. The sheriff's department has a longstanding practice, unique in California law enforcement, of refusing to investigate many citizen complaints against its deputies.

93. This practice has led deputies and other sheriff's personnel, such as DOES 1-20 herein, to commit acts of misconduct, believing that they will not be investigated or disciplined for their unlawful acts.

94. Some specific instances of this practice of refusing to investigate citizen complaints include the following:

95. In 2005, DeJoyce Milhouse filed a complaint of false arrest and excessive force against two sheriff's deputies on behalf of her teenage sons. Both of Ms. Milhouse's sons were unlawfully detained and arrested while doing nothing more than waiting for their mother to pick them up after a movie. One of her sons was beaten, charged with resisting the deputies, incarcerated in juvenile hall and charged with a crime based on false reports written by the deputies. He was later acquitted. One day after receiving Ms. Milhouse's complaint, an Internal Affairs lieutenant wrote Ms. Milhouse a letter claiming that the deputies did nothing wrong and refusing to investigate her complaint. Later, Ms. Milhouse filed a civil rights lawsuit on behalf of her sons. In a federal court jury trial, the deputies were found to have violated the plaintiffs' constitutional rights, awarding each of them $200,000. (See *Johnson v. County of San Diego,* USDC Case No. 05cv2233-H (WMc).)

96. In 2010, Lee Lacy filed a complaint against several sheriff's deputies for excessive force and false arrest. The sheriff's department refused to conduct

an investigation into his complaint. Mr. Lacy filed a federal civil rights action in this court, which resulted in a verdict in his favor. See *Lacy v. Palmer, et al.,* USDC Case No. 12cv0624-MMA (JMA).

97. In 2011, Ramon Acosta filed a complaint with the sheriff's department. Six days after Internal Affairs received his complaint, the Internal Affairs lieutenant sent Mr. Acosta a letter stating they would not conduct a formal investigation into his complaint.

98. In August, 2012, Pamela Olvera filed a complaint of excessive force, unlawful detention and false arrest on behalf of her then minor son, Ismael Chavira. One day after receiving Ms. Olvera's complaint, an Internal Affairs lieutenant sent Ms. Olvera a letter claiming that the deputy did nothing wrong and refusing to investigate her complaint. The department refused to conduct an investigation, despite the fact that there were several eye witnesses to the incident who confirmed that there was no basis for the detention of Mr. Chavira, or the force used by the deputy. Mr. Chavira filed a civil action relating to this incident, which was settled favorably to Mr. Chavira. (See, *Chavira v. County of San Diego,* USDC Case No. 14CV0364-MMA (RBB).)

99. In August, 2013, a county jail inmate filed a complaint of excessive force against sheriff's deputies, stating that he was known by jail personnel to suffer from seizures and had been severely beaten by deputies when he was in the midst of a seizure. Shortly after filing his complaint, the man received a letter from the sheriff's department stating that the deputies did nothing wrong and they were refusing to open an internal investigation.

100. Defendant County of San Diego, through its sheriff's department, has systematically failed to investigate these and numerous other complaints of misconduct by sheriff's deputies, or to discipline wrongdoers after citizens made complaints against sheriff's deputies.

101. This custom, policy and practice of refusing to investigate citizen

complaints of misconduct or to discipline wrongdoers has encouraged additional misconduct, particularly in the County's detention facilities. It has caused numerous sheriff's deputies to commit acts of misconduct, and to falsify their reports of the incidents, precisely because the deputies have come to believe that their improper acts will not be investigated by the sheriff's department and thus they will never be held accountable for their wrongful acts.

102. These systematic inadequacies permitted serious misconduct by County's sheriff's deputies and other jail personnel, to go unchecked.

103. Continued official tolerance of repeated misconduct facilitated similar unlawful actions to occur, including those alleged in the Factual Allegations and First Cause of Action herein.

104. The failure to institute an adequate system to receive, investigate and resolve citizen complaints against deputies amounts to a policy of deliberate indifference to the need for proper supervision of sheriff department personnel, including deputies and jail personnel. This is a policy for which defendant County is responsible.

Failure to Supervise

105. Upon information and belief, supervising jail officials were made aware of the misconduct or witnessed the Constitutional violations committed by the deputies and medical staff but failed to supervise or discipline them.

106. There has been an official policy of acquiescence in the wrongful conduct. Defendants failed to promulgate corrective policies and regulations in the face of repeated Constitutional violations.

107. Defendants condoned and acquiesced in the abusive behavior of their subordinates by refusing to retrain them, discipline them, or correct their abusive behavior.

108. As a result of Defendant County's deliberate indifference to the risk of deprivation of Joseph A. Scata's constitutional liberty interests set forth herein,

Plaintiffs have incurred damages as set forth herein.

109. As a proximate result of the unlawful policies, customs and habits alleged above, Plaintiffs suffered the constitutional violations alleged in the First and Second Causes of Action and the injuries and damages alleged in the First and Second Causes of Action and thus Plaintiffs are entitled to general and compensatory damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION

[Medical Negligence/Wrongful Death Under California Law by Plaintiffs Della Scata and Joseph A. Scata, Sr., Individually, as Successors in Interest to Joseph A. Scata, Jr., Against Defendants DOES 1-20]

110. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 38 above as though fully set forth herein.

111. By the acts alleged above, Defendants DOES 10-20, medical professionals working in the Vista Detention Facility, were negligent and breached their duty of due care to Joseph A. Scata, Jr., thereby causing the injuries to and death of Joseph A. Scata, Jr. as described in the First and Second Causes of Action, and the damages described therein. As a result, Plaintiffs are entitled to general and compensatory damages under California law in an amount to be proven at trial.

112. As a result of the medical negligence described herein, Plaintiffs Della Scata and Joseph A. Scata, Sr. are entitled to damages under California law according to proof at trial for the wrongful death of their son, including, but not limited to, loss of love, companionship, comfort, affection, society, moral support, financial support, services, advice, training and funeral expenses, for which defendants and each of them are responsible.

/ / /

/ / /

/ / /

## FIFTH CAUSE OF ACTION

[Government Code 845.6 - Failure to Summon Medical Care, Against Defendant County of San Diego and DOES 1-20]

113. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1 through 112 above as though fully set forth herein.

114. By the acts alleged above, Defendants DOES 1-20, medical professional employees, sheriff's deputies, and other employees of defendant County, knew that Joseph Scata, Jr. was seriously ill for weeks, and that his serious illness required medical treatment and care, yet they failed to summon medical care for him, thereby causing the injuries to, and death of, Joseph A. Scata, Jr. as described in the First and Second Causes of Action, and the damages described therein, for which Defendants County of San Diego and DOES 1-20 are responsible, pursuant to Government Code § 845.6. Defendant County is liable pursuant to its vicarious liability for the wrongs of its employees. As a result, Plaintiffs are entitled to general and compensatory damages under California law in an amount to be proven at trial.

115. As a result of the failure to summon medical care as described herein, Plaintiffs Della Scata and Joseph A. Scata, Sr. are entitled to damages under California law according to proof at trial for the wrongful death of their son, including, but not limited to, loss of love, companionship, comfort, affection, society, moral support, financial support, services, advice, training and funeral expenses, for which defendants and each of them are responsible.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for judgment against defendants and each of them as follows:

1. For general and compensatory damages against defendants and each of them in an amount to be proven at trial;

2. For exemplary and punitive damages against defendants DOES 1-20

only, in an amount to be proven at trial;

3. For costs of suit herein, including reasonable attorneys fees; and,

4. For such other relief as the Court deems proper.

Dated: April 25, 2016

**/s/ Michael R. Marrinan**
Attorney for Plaintiff

E-mail: mrmarrinan@aol.com

Plaintiffs hereby demand a jury trial in this action.

Dated: April 25, 2016

**/s/ Michael R. Marrinan**
Attorney for Plaintiff
E-mail: mrmarrinan@aol.com