# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ESTATE OF JOSEPH A. SCATA,

    Plaintiff,

v.

COUNTY OF SAN DIEGO,

    Defendant.

CASE NO. 16cv0008 JM(RBB)

ORDER GRANTING MOTION TO DISMISS; GRANTING LEAVE TO AMEND

    Defendant County of San Diego ("County") moves to dismiss the First Amended Complaint ("FAC") for failure to state a federal municipal liability claim. Plaintiff Estate of Joseph A. Scata ("Estate") opposes the motion. Pursuant to Local Rule 7.1(d)(1), the court finds the matters presented appropriate for resolution without oral argument. For the reasons set forth below, the court grants the motion to dismiss with leave to amend. Plaintiff shall file the amended complaint within 15 days of entry of this order.

## BACKGROUND

    The FAC, filed on April 25, 2016, alleges five causes of action: three federal claims for violation of 42 U.S.C. §1983 and two state law claims for medical negligence and failure to summon medical care in violation of Gov't Code §845.6. Only two causes of action are asserted against County: claim three for municipal liability under 42 U.S.C. §1983 and claim five for violation of Gov't Code §845.6. Estate's claims arise from the following generally described conduct.

On or about October 31, 2014, Joseph A. Scata, Jr. ("Scata"), an inmate at the Vista Detention Center, began having chest pain and flu symptoms. Plaintiff sought medical treatment "numerous times" during the period from October 31, 2014, until his death on November 23, 2014. (FAC ¶13). Scata's parents, Della Scata and Joseph A. Scata, Sr., also called the jail on numerous occasions to inform them of their son's "serious and deteriorating medical condition." On November 23, 2014, Scata was found unresponsive in his cell. He died shortly thereafter. An autopsy concluded that Scata died from empyema and acute bronchopneumonia that had existed for several days. Estate alleges that Scata's illness was fully treatable had he received "[e]ven minimal medical care and treatment." (FAC ¶16).

Besides County, Scata does not name any other party, only Doe defendants. In broad brush, Scata alleges that County violated the Civil Rights Act by (1) failing to adequately train correctional officers; (2) refusing to investigate complaints of misconduct; and (3) failing to adequately supervise jail personnel.

## DISCUSSION

**Legal Standards**

Fed.R.Civ.P. 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) dismissal is proper only in "extraordinary" cases. United States v. Redwood City, 640 F.2d 963, 966 (9th Cir. 1981). Courts should grant 12(b)(6) relief only where a plaintiff's complaint lacks a "cognizable legal theory" or sufficient facts to support a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1990). Courts should dismiss a complaint for failure to state a claim when the factual allegations are insufficient "to raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (the complaint's allegations must "plausibly suggest[]" that the pleader is entitled to relief); Ashcroft v. Iqbal, 556 U.S. 662 (2009) (under Rule 8(a), well-pleaded facts must do more than permit the court to infer the mere possibility of misconduct). "The plausibility standard is not akin to a 'probability

requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. at 678. Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The defect must appear on the face of the complaint itself. Thus, courts may not consider extraneous material in testing its legal adequacy. Levine v. Diamanthuset, Inc., 950 F.2d 1478, 1482 (9th Cir. 1991). The courts may, however, consider material properly submitted as part of the complaint. Hal Roach Studios, Inc. v. Richard Feiner and Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1989).

Finally, courts must construe the complaint in the light most favorable to the plaintiff. Concha v. London, 62 F.3d 1493, 1500 (9th Cir. 1995), cert. dismissed, 116 S. Ct. 1710 (1996). Accordingly, courts must accept as true all material allegations in the complaint, as well as reasonable inferences to be drawn from them. Holden v. Hagopian, 978 F.2d 1115, 1118 (9th Cir. 1992). However, conclusory allegations of law and unwarranted inferences are insufficient to defeat a Rule 12(b)(6) motion. In Re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Pleading Civil Rights Claims

Prior to Iqbal and Twombly, "a claim of municipal liability under § 1983 is sufficient to withstand a motion to dismiss even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." Whitaker v. Garcetti, 486 F.3d 572, 581 (9th Cir.2007). In addressing the impact of Iqbal and Twombly on the pleading standards for civil rights cases, the Ninth Circuit recently stated:

> [W]e can at least state the following two principles common to all of them. First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

AE ex rel. Hernandez v. County of Tulare, 666 F.3d 631,637 (9th Cir. 2012) (quoting

1  Starr v. Baca, 652 F.3d 1202 (9th Cir.2011)); Ileto v. Glock Inc., 349 F.3d 1191, 1200
2  (9th Cir. 2003) (court need not accept as true unreasonable inferences or conclusions
3  of law framed in the form of factual allegations).

**Municipal Liability**

County argues that Estate fails to state a claim for municipal liability. Under 42 U.S.C. § 1983, "[e]very person" who acts under color of state law may be sued. The term "person" has been interpreted broadly, even to include cities, counties, and other local government entities. See Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978). Municipalities, their agencies and their supervisory personnel cannot be held liable under Section 1983 on any theory of respondeat superior or vicarious liability. They can, however, be held liable for deprivations of constitutional rights resulting from their formal policies or customs. See Monell, 436 U.S. at 691-693; Watts v. County of Sacramento, 256 F.3d 886, 891 (9th Cir. 2001); Shaw v. California Dep't of Alcoholic Beverage Control, 788 F.2d 600, 610 (9th Cir. 1986).

Locating a "policy" ensures that a municipality "is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may be fairly said to be those of the municipality." Board of the County Comm'rs of Bryan County, Oklahoma v. Brown, 520 U.S. 397, 403-04 (1997) (citing Monell, 436 U.S. at 694). Similarly, an act performed pursuant to a "custom" which has not been "formally approved by an appropriate decisionmaker may fairly subject a municipality to liability on the theory that the relevant practice is so widespread as to have the force of law." Id. (citing Monell, 436 U.S. at 690-691); see also Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701, 737 (1989) (holding that municipal liability under § 1983 may be shown if Plaintiff proves that an employee committed alleged constitutional violation pursuant to a "longstanding practice or custom which constitutes the 'standard operating procedure' of the local government entity.").

"To bring a § 1983 claim against a local government entity, a plaintiff must plead that a 'municipality's policy or custom caused a violation of the plaintiff's

constitutional rights." Ass'n for Los Angeles Deputy Sheriffs v. Cnty. of Los Angeles, 648 F.3d 986, 992-93 (9th Cir. 2011).  A plaintiff must show (1) he possessed a constitutional right of which he was deprived, (2) the municipality had a policy, (3) the policy amounts to deliberate indifference to the plaintiff's constitutional right, and (4) the policy is the "moving force behind the constitutional violation." Anderson v. Warner, 451 F.3d 1063, 1070 (9th Cir. 2006).  "For a policy to be the moving force behind the deprivation of a constitutional right, the identified deficiency in the policy must be closely related to the ultimate injury," and the plaintiff must establish "that the injury would have been avoided had proper policies been implemented." Long v. Cnty. of Los Angeles, 442 F.3d 1178, 1190 (9th Cir. 2006).  In short, to hold a municipality liable for an individual officer's actions, the state actor must be acting pursuant to a formal policy, custom, or practice "which constitutes the standard operating procedure of the local governmental entity." Trevino v. Gates, 99 F.3d 911, 918 (9th Cir. 1996).

While Estate sets forth a litany of purported policies, practices, or customs, the allegations are conclusory and fail to provide County with sufficient notice to prepare an answer and to conduct discovery.  Estate's civil rights claim against County has three parts: failure to train, refusal to investigate complaints of misconduct, and failure to supervise.  The municipal liability allegations include: County "had a custom, policy or practice of failing to train its employees to be observant of and act upon signs and indications of medical conditions and illnesses in detainees;" County "failed to implement training material and programs;" County "failed to maintain adequate and proper training necessary to educate deputies and medical staff as to the Constitutional rights of inmates;" County "failed to train medical employees and personnel on the necessary care of inmates;" County "failed to provide adequate supervision;" County "failed to promulgate and enforce adequate policies and procedures related to misconduct;" County failed "to investigate many citizen complaints against sheriff's deputies;" and County failed to adequately supervise its employees, to retrain its employees, and to discipline them.  (FAC ¶¶ 76-109).  These generic and conclusory

1  allegations are insufficient for the imposition of liability on County.

2  Scata also sets forth several allegations concerning the treatment of other
3  inmates. Scata alleges that in the five-year period between 2007 and 2012, 60 inmates
4  died while in the custody of County; Daniel Sisson, a former inmate at the Vista jail,
5  won a $3,000,000 verdict by showing that County was deliberately indifferent to his
6  heroin withdrawal symptoms and asthma; and Bernard Victorianne, an inmate in the
7  Central Jail, allegedly died from a treatable medical condition. (FAC ¶¶22, 31, 32).
8  Scata attributes the deaths to unconstitutional policies, customs, or practices of County.
9  (FAC ¶51). With respect to these disparate factual allegations, Scata fails to show how
10 the allegations demonstrate the right to relief beyond a speculative level.[1]

11 The court is mindful of the tension created by the "unfair" demand of subjecting
12 a municipality to unwarranted discovery and litigation based upon inadequate pleading,
13 see AE ex rel. Hernandez, 666 F.3d at 637, and the reality of viable Monell claims
14 coming to light only after discovery revelations. At this juncture, however, the balance
15 must be struck against threadbare recitation of Monell-type elements and in favor of
16 the pleading constraints of Iqbal and Twombly. Should discovery related to the
17 unchallenged claims reveal sufficient facts to buttress claim(s) under Monell, Plaintiff
18 may seek timely leave to amend the operative complaint.

19 In sum, the court grants the motion to dismiss with 15 days leave to amend from
20 the date of entry of this order.

21 **IT IS SO ORDERED.**

22 DATED: September 14, 2016

23
24 Hon. Jeffrey T. Miller
    United States District Judge

cc:       All parties

---

[1] According to the San Diego County Sheriff's Department website, the court notes that the jail population for the period of 2007 to 2012 was in the tens of thousands. See http://www.sdsheriff.net/jailinfo.html. The court declines to reach the state law claim until Estate establishes a viable federal claim.